UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | 3:07-cv-00164 JWS |
| vs. | ) ) | ORDER AND OPINION |
| INDEE JANE DAVIS, HEATHER ELIZABETH GREENOUGH and M. D., a minor, | ) ) ) ) ) | [Re: Motion at Docket 24] |
| Defendants. | ) ) | |

## I.  MOTION PRESENTED

At docket 24, plaintiff State Farm Life Insurance Company ("State Farm") moved for summary judgment seeking dismissal of Indee Jane Davis's ("Jane") counterclaim. Jane filed a response at docket 39 to which State Farm replied at docket 43.  Meantime, at docket 28, defendant Heather Elizabeth Greenough ("Greenough") had responded to State Farm's motion, and at docket 31, defendant M.D., a minor, joined Greenough's response.  State Farm replied to these responses at docket 33.  Oral argument was heard on May 22, 2008.

## II.  BACKGROUND

This is an interpleader action in which jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and relief is sought pursuant to Federal Rule of

Civil Procedure 22. The applicable substantive law is Alaska law. The salient facts are not in dispute. John B. Davis, Jr. ("John") married defendant Indee Jane Davis ("Jane") in 1975. In 1997, John purchased a life insurance policy issued by State Farm, and in the paperwork designated his wife Jane as his primary beneficiary. John's two children, Heather Elizabeth Greenough and M.D. (a minor), were named as successor beneficiaries. John and Jane divorced in 2003, however neither the state court's divorce decree nor any document related to the divorce referred to the life insurance policy. John Davis died in 2007.

Pursuant to the life insurance policy, State Farm owes $200,000 plus interest to whomever qualifies as a beneficiary under the policy. State Farm has paid that sum into the court, because it became aware of conflicting claims to the insurance proceeds. More specifically, a conflict has arisen between Jane and her children concerning the effect of AS 13.12.804(a)(1)(A) on Jane's status as the primary beneficiary under the policy. This statutory provision, which is part of the Alaska Probate Code, has the effect of revoking one spouse's designation of the other as a beneficiary in a life insurance policy upon divorce. Complicating what might otherwise be a straightforward application of this "revocation-upon-divorce" statute to John's designation of Jane as the beneficiary is the fact that after the divorce John told the employee of an insurance agency from whom he had purchased the State Farm policy that he continued to desire that Jane remain as the primary beneficiary. The employee to whom John spoke was Jeannie R. Campbell, an employee of the David J. Strike Insurance Agency. She assisted John and Jane with several life insurance policies. In an affidavit, Ms. Campbell acknowledged that because Jane was already named as the primary beneficiary in John's policy, Ms. Campbell did not understand that anything else might need to be done to effectuate her status as the primary beneficiary.[1]

When Jane answered the complaint, she included a counterclaim against State Farm based on alleged negligence and breach of contract resulting from Jeannie Campbell's failure to assure Jane's status as the primary beneficiary under John's

---

[1]Doc. 25 at ¶ 4.

policy.  The counterclaim seeks to recover damages, attorney's fees, and costs.  The day before oral argument on the pending motion, Jane and the children filed a notice of settlement which was to be submitted to the state probate court for approval, because of M.D.'s status as a minor.  During oral argument defense counsel represented that the settlement divided the proceeds of John's life insurance policy three ways.   Precisely how the proceeds are divided was not stated.

### III.  STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[2]  To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[3]  Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[4]  The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[5]

### IV.  DISCUSSION

State Farm argues that because Jane is entitled to the proceeds of the policy on John's life she has suffered no damages, from which it follows that her counterclaims must be dismissed.  On the other hand, says State Farm, if Jane is not the primary

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Id.* at 325.

[4] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248-49 (1986).

[5] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

beneficiary, State Farm would not be liable to her, because it owed her no duty which was breached when Ms. Campbell failed to assist John in perfecting Jane's status as a primary beneficiary.

There are two propositions which must be established by anyone attempting to show that Jane is the primary beneficiary. The first proposition is that contrary to the seemingly plain language of AS 13.12.804(a)(1)(A), John and Jane's divorce did not necessarily revoke her status as the primary beneficiary, but rather–as State Farm contends–merely created a rebuttable presumption that her status was revoked. The second proposition is that the evidence available in the record rebuts the statutory presumption.

There is no Alaska case law interpreting the revocation-upon-divorce provision in the Alaska Probate Code, but State Farm points to AS 13.06.010(b)(2) which indicates that a primary purpose of the Probate Code is to "discover and make effective the intent of a decedent in distribution of the decedent's property." State Farm then reasons that because the Alaska Probate Code is derived from the Uniform Probate Code (UPC), decisions from other states which have adopted the UPC should be considered. Although not noted by State Farm, it may be noted here that consideration of decisions in other states is consistent with the Alaska Probate Code, because one of its purposes is to "make uniform the law among the various jurisdictions."[6]

Looking to other jurisdictions, State Farm cites an Arizona case, *In Re Estate of Rodriquez*[7] and a California case, *Coughlin v. Board of Administration*,[8] for the proposition that a revocation-upon-divorce provision rests upon the assumption that following a divorce, a person holding the power to revoke a pre-divorce direction of benefits to a prior spouse would wish to revoke that direction, but might fail to do so from "inattentiveness." Relying on *Coughlin,* and *Stillman v. Teachers Ins. & Annuity*

---

[6]AS 13.06.010(b)(5).

[7]160 P.3d 679 (Ariz. App. 2007).

[8]152 Cal. App. 3d 70 (Cal. App. 1984).

-4-

*Ass'n College Retirement Equities Fund,*[9] State Farm goes on to assert that this assumption is more compatible with the proposition that the statute creates a rebuttable presumption of revocation than with a rigid rule of revocation.

In *Rodriguez*, the court considered an Arizona statute, A.R.S. § 14-2804(A)(1)(a), which provided for revocation upon divorce or annulment of a marriage and is substantively identical to AS 13.12.804(a)(1)(A). In *Rodriguez*, the provisions of a will and trust executed by decedent Kathryn Rodriguez directed benefits to her putative husband, Mauro Rodriguez. The Arizona court found the marriage was invalid, because Mauro had been married to another woman at the time he married Kathryn. Nevertheless, the Arizona court held that the revocation statute did not invalidate the provisions in Kathryn's will directing benefits to Mauro. It did so by holding that the determination of marital invalidity took place after Kathryn died, by which time her direction of benefits to Mauro had become irrevocable, not by finding that the statute created a rebuttable presumption.[10] Thus, while *Rodriqguez* does support the notion that revocation-upon-divorce laws are intended to protect the inattentive, it sheds no light on whether that protection is provided in the form of an absolute or a rebuttable presumption.

In *Coughlin*, a California court addressed a dispute arising not under the probate code, but under statutes governing the California Public Employees' Retirement System. Like the revocation-upon-divorce provision in the UPC, the relevant provision of the California government code provided for the revocation of a beneficiary designation upon dissolution of a marriage. The facts in *Couglin* were these: A man named Taylor filed for divorce, and then executed a new beneficiary designation naming his mother in place of the woman from whom he was seeking a divorce. Thereafter, the divorce became final, but Taylor filed no additional designation. After Taylor died, an administrative judge held that the divorce revoked his designation of the mother as his beneficiary, and under California law applicable in the absence of a valid designation,

---

[9]343 F. 3d 1311 (10th Cir. 2003) (applying Utah law).

[10]*Rodriguez* at 160 P. 3d 686.

-5-

the benefits would go to the adult children of Taylor's marriage rather than to his mother, Mrs. Coughlin. On appeal, the court framed the controlling question to be "whether his intent [as expressed in the designation filed after the divorce proceeding was initiated] must be subverted simply because he filed too soon."[11] The court had little trouble providing a negative answer, because Taylor's true intent was so clear from the facts. Although it did not explicitly discuss the proposition that the statutory revocation provision created a rebuttable presumption, the court's holding is consistent with that concept and inconsistent with the notion of a rigid rule.

In *Stillman*, the Eleventh Circuit confronted the question whether Utah's revocation-upon-divorce provision in its probate code could be applied retroactively to a divorce which took place many years prior to enactment of the provision. In the course of a lengthy discourse on retroactivity, the court concluded that under Utah law, the revocation provision, which is substantively identical to the Alaska provision at issue here, should be viewed as a rule of construction, something explaining how to construe legal materials. Viewed as a rule of construction, the court found that the revocation-upon-divorce provision could properly be applied retroactively. The court wrote that in the probate context a provision such as the revocation-upon-divorce statute is meant to follow the modern approach to donative transfers whose object is to accomplish what the donor intended. The Eleventh Circuit explained that in some circumstances this would mean that the donor's intention would be considered the equivalent of what most people would intend under circumstances such as a divorce: "In the absence of evidence that establishes by a preponderance of the evidence that the particular donor's intention differs from common intention, ambiguities are resolved to the extent possible by construing the document to accord with common intention."[12]

Unsurprisingly, Jane has not asserted that State Farm errs when it contends that she is the beneficiary. Unsurprisingly, the other defendants have. They cite no case law, but contend that State Farm's position fails because it is based on some sort of

---

[11]*Coughlin*, 152 Cal. App. 3d at 73.

[12]*Stillman*, 343 F. 3d at 1317 (quoting from Restatement (Third) of Property: Wills & Other Donative Transfers).

verbal agreement between John and Jane relating to their overall estate planning which required John to make Jane his beneficiary. Such an agreement would be unenforceable under the pertinent portion of Alaska's Statute of Frauds, AS 09.25.010(a)(2). The court agrees that an agreement between John and Jane or a promise or undertaking given by John to Jane to name her as beneficiary would fall within the Statute of Frauds. However, State Farm's primary argument is that regardless of whether John and Jane had any sort of agreement, John actually did express his intention to Ms. Campbell that Jane was the primary beneficiary. The designation of a beneficiary, as contrasted with an "agreement, promise or undertaking" to do so, does not fall within the Statute of Frauds.

Greenough and M.D.'s other argument is that the rebuttable presumption construction of AS 13.12.804 (a)(1)(A) is incompatible with AS 13.06.010. They rely specifically on AS 13.06.010(b)(1) which says that one of the purposes of the Alaska Probate Code is "to clarify and simplify the law concerning the affairs of decedents." Suffice it to say that when AS 13.06.010 (b) is read as a whole, the parsing by Greenough and M.D. which relies on subsection (b)(1) is less convincing than the parsing by State Farm which relies on subsection (b)(2). That is so for two reasons. First, among the five identified purposes expressed in subsections (b)(1) through (b)(5), it is (b)(2) which is directly in point on the issue of intent. Second, adopting a construction of the revocation-on-divorce statute, which holds that it creates a rebuttable presumption, does not amount to mean that the *law* is any less clear or less simple than it would be if the rigid rule construction were adopted. Either is clear and simply understood.[13]

This court concludes that based on AS 13.06.010(b)(2), and in light of the reasoning in the California and Utah cases discussed above, the Alaska Supreme Court would construe the revocation-upon-divorce provision of the Alaska Probate Code to create a rebuttable presumption, not a strict and inflexible rule. The Alaska court would

---

[13]It is true that the rebuttable presumption construction may render application of a clear and simple statement of law to the facts in particular case more difficult than application of a rigid rule, but that does not render the rebuttable presumption construction any less clear or simple a statement of the law.

do so in order to achieve the fundamental goal of honoring the decedent's actual intention. Drawing that conclusion brings the court to the second proposition.

As noted by the Eleventh Circuit, to avoid a statutory imposition of the "common intention," there must be proof by a preponderance of the evidence that the deceased actually intended to designate the otherwise revoked beneficiary in spite of the divorce. In cases like *Coughlin* and *Stillman* there were undisputed facts disclosed in written documents which evidenced the actual intent. In the case at bar, the evidence consists solely of Ms. Campbell's report of John's statements of intent made to her.

A preliminary concern with using this evidence is that it consists of statements made by John who will not actually give testimony on the subject which would be offered to prove the truth of the proposition that John was naming Jane as the beneficiary even after the divorce. Ms. Campbell's testimony is hearsay, which ordinarily would be excluded under Rule 802 of the Federal Rules of Evidence. State Farm contends that the evidence is admissible under an exception to the hearsay rule. The court agrees: Rule 803(3) as pertinent here provides that "a statement of the declarant's then existing state of mind . . . (such as intent . . .)" is not excluded by Rule 802.

The next question is whether Ms. Campbell's testimony recounting John's verbal designation of Jane establishes by a preponderance of the evidence that it was John's intent to keep Jane as the primary beneficiary. It does. The other parties had a chance to present contrary evidence and did not do so. The record discloses no other evidence of John's intent. Under the principles that apply to motions for summary judgment, State Farm has established as a matter of law that Jane is the primary beneficiary.

In sub-part IV of its memorandum supporting its motion to dismiss the counterclaims, State Farm argues that Jane is the beneficiary and that if Jane is recognized as the beneficiary, she has no damages and so her counterclaims must be dismissed. Recognizing the possibility that State Farm would succeed in showing that she was the beneficiary, but wishing to preserve her counterclaims, Jane argues that she has damages flowing from State Farm's refusal to simply pay her the benefits. She puts it this way in her response: "Indee Jane Davis also generally agrees with sub-part

IV of State Farm's motion with the qualification that even if the court agrees with State Farm [sic] analysis on sub-part IV, there are still damages that Indee Jane Davis has suffered. In particular, State Farm . . . created a dispute where no dispute needed to exist between Indee Jane Davis and her daughters."[14]

Finding the above explication of damages vague, the court examined Jane's counterclaims to see what relief she demands and discovered that she seeks to recover "all damages" flowing from State Farm's actions, "all attorney's fees, costs and interest allowable under the law" and "any other relief the court deems appropriate."[15] The damage to Jane flowing from State Farm's actions is the failure to pay her the insurance proceeds. State Farm deposited the insurance proceeds with the court when it filed the interpleader action, and because the court has ruled that she is entitled to those proceeds, it could easily be contended, as State Farm has contended, that State Farm has not damaged Jane and therefore is entitled to summary judgment. However, the settlement reached between Jane and her children may alter the analysis of that argument, for the settlement means Jane will receive less than all of the insurance proceeds.

As State Farm tacitly acknowledges in its briefing, if Jane is the beneficiary, then Jane is entitled to enforce the insurance contract. Here, Jane's position is that the contract was breached either because State Farm's agent, Ms. Campbell, failed to take the steps necessary to foreclose application of the revocation-upon-divorce statute or because State Farm commenced an interpleader action when the undisputed facts show that Jane was the beneficiary and so "created a dispute where no dispute needed to exist."

Neither State Farm nor Jane has yet briefed the extent of the duty owed by State Farm to Jane in the context created by the settlement and whether her decision to settle is an independent act for which State Farm is not responsible. Resolution of these issues, and perhaps others which might bear upon whether State Farm breached a duty

---

[14]Doc. 39 at p. 5.

[15]Doc. 4 at p. 7.

Case 3:07-cv-00164-JWS   Document 53   Filed 06/03/08   Page 9 of 10

to Jane which damaged her, is impossible on the existing record. Because State Farm's motion for summary judgment depends on showing the non-existence of any damages to Jane, it follows that State Farm is not entitled to summary judgment at this time.

## V. CONCLUSION

For the reasons set out above, the motion for summary judgment at docket 24 is **DENIED**.

DATED at Anchorage, Alaska, this 3rd day of June 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE