**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| **STATE FARM LIFE INSURANCE COMPANY,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **INDEE JANE DAVIS, HEATHER ELIZABETH GREENOUGH and M.D., a minor,** ) <br> ) <br> ) <br> Defendants. ) <br> ) | 3:07-cv-00164 JWS <br><br> **ORDER AND OPINION** <br><br> [Re: Motion at Docket 54] |

## I. MOTION PRESENTED

At docket 54, plaintiff and counter-defendant State Farm Life Insurance Company ("State Farm") renews its motion for summary judgment seeking an order dismissing the counterclaim filed by defendant and counter-plaintiff Indee Jane Davis ("Jane"). Jane opposes State Farm's motion at docket 61. State Farm replies at docket 64. Oral argument was heard on November 7, 2008.

## II. BACKGROUND

Much of the background of this matter is recited at docket 53 and will not be repeated here. State Farm filed this interpleader on August 23, 2007. Jane answered and counterclaimed September 18, 2007, seeking costs and damages against State Farm arising from alleged negligence, bad faith, and breach of contract. On June 3, 2008, this court denied State Farm's initial motion for summary judgment, which sought

an interpretation of AS 13.12.804 (Alaska's revocation-upon-divorce statute) and dismissal of Jane's counterclaims, holding that "the Alaska Supreme Court would construe the revocation-upon-divorce provision of the Alaska Probate Code to create a rebuttable presumption" in favor of revocation-upon-divorce, and that Jane had rebutted the presumption in this case. The court then concluded as a matter of law that Jane was the primary beneficiary of the life insurance policy held by John B. Davis, Jr. ("John") (the "policy") and was therefore entitled to all the proceeds. The court denied State Farm's motion with respect to Jane's counterclaims because those issues had not been fully briefed.

Jane alleges in her counterclaim that John's insurance agent, Jeannie Campbell ("Campbell"), who is an employee of the David Strike Agency, failed to assure Jane's status as the primary beneficiary under John's policy and that State Farm forced her to litigate with John's successor beneficiaries - Jane's daughters and co-defendants, Heather Greenough and M.D. (a minor). John and Jane have worked with Campbell for approximately 30 years on numerous insurance policies.[1] It is undisputed that John spoke with Campbell after his divorce from Jane and reaffirmed his intention to maintain Jane as his primary beneficiary.[2] Campbell also communicated John's intention to Jane.[3] In addition, John remained the primary beneficiary of Jane's life insurance policy, which was also placed by Campbell.[4] The parties have not discussed, nor is the court aware of, all of the specifics of the conversations between John and Campbell or Jane and Campbell. Although John communicated his intent to maintain Jane as primary beneficiary, Campbell did not revise the policy because Jane was already listed as the primary beneficiary of John's policy. Because Campbell "believed there was nothing [she] needed to do to make sure that John's life insurance proceeds were

---

[1] Docket 61, Affidavit of Indee Jane Davis ¶ 1.

[2] *See* Docket 53 at 8; *see also* Docket 61, Affidavit of Jeannie R. Campbell ¶ 3.

[3] Docket 61, Affidavit of Indee Jane Davis ¶ 10.

[4] *Id.*

distributed as requested," she did not revise John's policy.[5]  It is unclear whether Campbell was aware of Alaska's revocation-upon-divorce statute.

State Farm nevertheless interpleaded the policy proceeds because it was unsure of the effect that John's divorce from Jane had on his policy in light of AS 13.12.804. State Farm was aware, through Campbell, that John had reaffirmed his intent to maintain Jane as his primary beneficiary.  The court is unaware of the specific facts regarding Campbell's communications with State Farm or State Farm's decision to file the interpleader.  On the eve of the first summary judgment hearing, Jane settled with her daughters to avoid potentially losing all of the proceeds of John's life insurance policy by an adverse judgment as to the operation of the revocation-upon-divorce statute.  Jane took only one-third of the insurance proceeds under the terms of the settlement.  Now, Jane maintains her counterclaim for damages against State Farm for the remaining two-thirds of the proceeds and costs associated with this litigation.  As the court indicated at the end of its order at docket 53, "[n]either State Farm nor Jane has yet briefed the extent of the duty owed by State Farm to Jane in the context created by the settlement [with her daughters] and whether her decision to settle is an independent act for which State Farm is not responsible."  The parties have now briefed these issues, and the court considers their arguments below.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show that material facts are not genuinely disputed.[6]  To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[7]  Once the moving party meets its

---

[5]Docket 61, Affidavit of Jeannie R. Campbell ¶ 4.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Id.* at 325.

burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial. [8] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[9]

## IV. DISCUSSION

The parties do not dispute whether the David Strike Agency or Jeannie Campbell are authorized agents of State Farm. The court assumes that Campbell's knowledge and actions may be imputed to State Farm under an agency theory. State Farm argues that neither it nor Campbell owed a professional duty to provide legal advice to John or Jane regarding the existence and legal effect of Alaska statutes regarding divorce or probate.[10] Even if State Farm or Campbell did owe such a duty, State Farm claims that it did not breach its contract with John (or Jane as third-party beneficiary), act in bad faith, or act negligently.[11] State Farm also argues that Jane's settlement was an intervening act that eviscerates the element of causation required to sustain breach of contract, negligence, or bad faith claims.[12] State Farm further contends that Jane has disclaimed and/or waived her right to be paid the full amount of the policy by settling with the successor beneficiaries[13] or should be estopped from asserting a claim for

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[9] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

[10] Docket 54 at 3-4.

[11] Docket 54 at 4-6.

[12] *Id.* at 6-7; *see also* Docket 64 at 12-13.

[13] Docket 54 at 7-8.

-4-

extra-contractual damages.[14] Finally, State Farm claims that damages arising from an interpleader action are not permitted under Alaska law.[15]

Jane opposes State Farm's motion and argues that there are genuine issues of material fact precluding this court from finding for State Farm on any of Jane's claims. First, Jane argues that State Farm owed and breached tort and contract duties when it failed to distribute the proceeds of John's policy in accordance with John's expressed intent.[16] Jane also argues that State Farm acted in bad faith by failing to fulfill John's reasonable expectation that Jane would receive all of the policy proceeds.[17] Jane further claims that the settlement between Jane and her daughters was not an intervening act precluding relief because State Farm placed the risk of losing the policy proceeds on Jane by interpleading the funds.[18] Finally, Jane claims that State Farm owes her attorney's fees and costs incurred in connection with State Farm's alleged wrongful acts.[19]

The key issues to be decided include (1) whether State Farm or Campbell acted in bad faith or owed and breached a professional duty to Jane, as a third-party beneficiary of John's policy, when Campbell failed to revise John's policy after he expressed his intent to maintain Jane as primary beneficiary following their divorce; (2) whether State Farm's interpleader constituted breach of contract or was filed in bad faith; (3) whether State Farm or Campbell's actions caused Jane to be deprived of the entirety of the policy proceeds; and (4) whether Jane waived or should be estopped from asserting claims against State Farm because she settled with her daughters. The court addresses each issue in turn.

---

[14] *Id.* at 9-11.

[15] *Id.* at 12-13.; *see also* Docket 64 at 11-14.

[16] Docket 61 at 7.

[17] *Id.*

[18] *Id.*

[19] *Id.*

## A. Existence of a Legal Duty

### 1. Contract Duty

State Farm essentially ignores the question of whether State Farm owes a contractual duty to Jane as third-party beneficiary, focusing instead on the issue of breach of contract.[20] The law is clear that a promisor owes a contractual duty to intended third-party beneficiaries. Restatement (Second) of Contracts section 302 states that:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> 
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> 
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.[21]

A contract of this sort "creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."[22] Alaska "recognize[s] a third-party right to enforce a contract upon a showing that the parties to the contract intended that at least one purpose of the contract was to benefit the third party."[23] Intent is determined by focusing on the objective motive of the promisee - here, John.[24] There is no question that John's policy was intended to benefit Jane - indeed, Jane's benefit was the sole purpose of John's life insurance policy. Therefore, State Farm owed a contractual duty to Jane to distribute the proceeds of John's policy to her.

---

[20]*See* Docket 54 at 4-6 and Docket 64 at 3-4.

[21]Restatement (Second) of Contracts § 302.

[22]*Id.* § 304.

[23]*Smallwood v. Central Peninsula General Hosp.*, 151 P.3d 319, 324 (Alaska 2006).

[24]*Id.*; *see also Rathke v. Corrections Corp. Of America*, 153 P.3d 303, 310 (Alaska 2007).

-6-

**2. Bad Faith**

Under Alaska law "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort."[25] In support of her bad faith claim, Jane cites authorities involving third-party, as opposed to first-party, claims for bad faith. Although Jane has counterclaimed against State Farm as an intended third-party beneficiary of John's insurance policy, the Alaska Supreme Court has compared the relationship of an intended third-party beneficiary to the relationship between an insurer and its insured for purposes of a bad faith claim: "In our view the relationship of a surety to its obligee--an intended creditor third-party beneficiary--is more analogous to that of an insurer to its insured than to the relationship between an insurer and an incidental third-party beneficiary."[26] Therefore, State Farm is correct that Jane's claim is a first-party claim for bad faith and sounds in tort.

**3. Professional Duties**

Generally, "[a]n agent employed to effect insurance must exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his or her profession or situation, in doing what is necessary to effect a policy, in seeing that it effectually covers the property to be insured, in selecting the insurer, and so on."[27] Alaska law is fundamentally the same: "an insurance agent owes a duty . . . to exercise reasonable care, skill, and diligence in procuring insurance."[28] This duty runs not only to

---

[25]*State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1155 (Alaska 1989).

[26]*Loyal Order of Moose, Lodge 1392 v. Int'l Fid. Ins. Co.*, 797 P.2d 622, 628 (Alaska 1990).

[27]Lee R. Russ and Thomas F. Segalla, 3 Couch on Insurance 3d § 46:30 (2008).

[28]*Peter v. Schumacher Enters., Inc.*, 22 P.3d 481, 485 (Alaska 2001) (citing *Eagle Air, Inc. v. Corroon & Black/Dawson & Co.*, 648 P.2d 1000, 1006 (Alaska 1982)). In addition, insurance agents in Alaska must "'obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so.'" *Peter*, 22 P.3d at 485 (quoting *Murphy v. Kuhn*, 90 N.Y.2d 266, 660 N.Y.S.2d 371, 682 N.E.2d 972, 974 (1997)).

the insured, but also to a legally recognized beneficiary of an insurance policy.[29] For an insurance agent, the degree of skill required in exercising the duty of care:

> depend[s] greatly upon the character of the agent's business or his or her situation, upon whether he or she is a skilled agent or not, and also upon the degree of skill which he or she assumes to possess; if the agent holds himself or herself out as possessing certain skill, or if his or her business is such as to carry with it an implication that he or she possesses a particular skill in effecting insurances, as in case of an insurance broker, the agent's principal is justified in relying upon the knowledge which he or she professes to possess, and the agent is bound to exercise the skill and to use the knowledge which the business requires, and which persons of average capacity engaged therein possess.[30]

The parties do not substantially disagree about the basic types of duties owed by an insurance agent.[31] Jane's authorities recite the same duties noted above - that insurance agents owe a duty to the insured to fulfill reasonable expectations,[32] to

---

[29] 3 Couch on Insurance 3d § 46:70 ("In order to bring a direct cause of action against an agent for negligence in procuring an insurance policy, one must allege his or her status as a legally recognized beneficiary of a written or implied contract to procure insurance between the agent and the named insured."); *see also John Hancock Mut. Life Ins. Co. v. McNeill*, 556 P.2d 803 (Ariz. App. 1976) (permitting tort claims by insured's widow against insurance company and insurance agent).

[30] 3 Couch on Insurance 3d § 46:32.

[31] The parties also appear to agree (because they cite the same root authority) that, where there are no genuine disputes of material fact, both the existence and scope of a legal duty is a question of law for the court to decide, *Diblik v. Marcy*, 166 P.3d 23, 25 (Alaska 2007) (citing *Arctic Tug & Barge, Inc. v. Raleigh Schwarz & Powell*, 956 P.2d 1199, 1204 (Alaska 1998)), but that Alaska "disfavor[s] summary adjudication of the precise scope of that duty . . . when the scope of the duty poses a fact-specific question, involving policy and 'circumstantial judgments' that our legal system reserves for the [fact-finder]." *Guerrero v. Alaska Housing Fin. Corp.*, 6 P.3d 250, 257 (Alaska 2000) (quoting *Arctic Tug & Barge,* 956 P.2d at 1203).

[32] *Puritan Life Ins. Co. v. Guess*, 598 P.2d 900, 906 (Alaska 1979) ("[W]e require that the insurer's agent, who negotiates the application, personally draw to the attention of the applicant any limiting conditions.").

-8-

procure insurance,[33] and to exercise reasonable care, skill, and diligence.[34] State Farm's position, however, is that although an insurance agent owes a duty of reasonable care, "knowledge of the Probate Code or divorce law exceeds the scope of duty reasonably owed by State Farm."[35] Jane, on the other hand, argues that Campbell did have a duty to know about the revocation-upon-divorce statute, citing two cases from the Alaska Supreme Court discussing an insurers' obligations under specific Alaska statutes pertaining to automobile[36] and personal casualty[37] insurance. Because Jane's "duty to know the law" authorities discuss statutes which impose specific requirements on insurers, they are inapposite. The court is unaware of any cases imposing a general duty on insurance agents to know the law.

However, because insurance is a complicated business with "intricacies that often confuse the average layman," every state, including Alaska, requires that insurance agents obtain licenses "so as to place the business of insurance in competent and trustworthy hands."[38] The duties arising from the relationship between an agent and an insured in placing insurance coverage must be viewed with reference to the agent's expertise in this highly specialized industry. Thus, within an insurance agent's duty of reasonable care are various obligations that may be implied in an appropriate factual scenario. The court therefore concludes that under these circumstances Campbell owed a duty of reasonable care, skill, and diligence to ensure that John's intent was effected. After his divorce from Jane, John specifically told Campbell that he wanted Jane "to remain as the primary beneficiary on his life insurance policy" and

---

[33] *Jefferson v. Alaska 100 Ins., Inc.*, 717 P.2d 360, 363 (Alaska 1986) ("An agent or broker is liable to an insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss.").

[34] *Peter*, 22 P.3d at 485 (citing *Eagle Air*, 648 P.2d at 1006).

[35] Docket 64 at 9.

[36] *See Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228 (Alaska 2007).

[37] *See State v. Progressive Cas. Ins. Co.*, 165 P.3d 624 (Alaska 2007).

[38] *Riddle-Duckworth, Inc. v. Sullivan*, 171 S.E.2d 486, 490 (S.C. 1969).

Campbell failed to do anything to ensure that the divorce had not affected the pre-divorce policy.[39] Although Campbell did not fail to procure insurance, her inaction frustrated John's clear intent. Campbell's obligation may have required her to know about Alaska's revocation-upon-divorce statute or inquire with State Farm about the possible effect of the divorce and to revise John's policy after his divorce from Jane. But the court cannot, on the present record, determine the extent and scope of State Farm or Campbell's duty. The parties point to no facts regarding what, if anything, Campbell did to determine that her course of action was the correct one, what level of skill she possesses, or what type of service David Strike Agency offered its clients. The parties also have not developed the facts regarding Campbell's discussions with John and with Jane, Campbell's discussions with State Farm, and State Farm's internal policies

As a final matter, State Farm and Jane also disagree about whether an insurer's duty to advise applies in the case. Alaska, like many jurisdictions, has imposed a common law "duty to advise" an insured of material knowledge and facts possessed by the insurer or its agent where there is a "special relationship" between the insured and insurer.[40] A "special relationship" exists in several circumstances: (1) where an insurer misrepresents the nature of the coverage being offered or provided, an insured may justifiably rely on an agent's representations in choosing a policy; (2) where an insurance agent voluntarily assumes the responsibility for selecting the appropriate insurance policy for the insured; (3) where an insurance agent fails to appropriately respond to a request or inquiry for or about a particular type or extent of coverage; or (4) where an ambiguous request is made by an insured.[41] Although John and Jane had a long-standing relationship with Campbell, the parties have neither developed facts nor adequately briefed the issue of whether a "special relationship" exists. The court therefore declines to rule on the existence of a "special relationship" at this time.

---

[39] *Id.*, Exhibit 1 ¶ 3.

[40] *Peter*, 22 P.3d at 486.

[41] *Id.* at 486-87.

-10-

**B. Breach**

    **1. Campbell's Omission**

Jane's tort claims - for negligence and bad faith - may not be resolved at this time because State Farm has not met its burden of establishing as a matter of law that Campbell did not breach her duty of reasonable care, skill, and diligence or act in bad faith. Regarding Jane's negligence claim, the Restatement (Second) of Torts states that "[w]hen an act is negligent only if done without reasonable care, the care which the actor is required to exercise to avoid being negligent in the doing of the act is that which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another."[42] The Restatement continues that "[a]n act may be negligent if it is done without the competence which a reasonable man in the position of the actor would recognize as necessary to prevent it from creating an unreasonable risk of harm to another."[43] Whether an insurance agent has exercised reasonable care or was negligent is traditionally determined by the trier of fact.[44] Therefore, for the same reasons the court cannot determine the extent or scope of Campbell's duty, the court cannot assess the reasonableness of her actions. Without knowledge of the specifics of the discussions between John and Campbell, Jane and Campbell, or Campbell and State Farm, it is impossible to determine whether Campbell or State Farm acted reasonably.

Similarly, Jane's bad faith claim, as it relates to Campbell's actions, cannot be resolved on summary judgment. While it is "clear that . . . the tort of bad faith in first-party insurance cases may or may not require conduct which is fraudulent or deceptive, it necessarily requires that the insurance company's refusal to honor a claim

---

[42]Restatement (Second) of Torts § 298.

[43]*Id.* § 299.

[44]*Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1258 (Alaska 2003).

-11-

be made without a reasonable basis."[45] In the insurance context, the Alaska Supreme Court has recognized that "[a]lthough bad faith is not fully defined in some jurisdictions, courts have consistently held that a refusal to pay benefits based on a reasonable interpretation of the insurance contract is not bad faith."[46] However, Jane's bad faith claim arises not out of a refusal to pay benefits, but a failure to effectuate John's clear intent. Because the question of Campbell and State Farm's reasonableness in failing to distribute the proceeds of John's policy according to his wishes cannot be resolved on the present record, the court is unable to rule on the merits of Jane's bad faith claim. Furthermore, Alaska law "may or may not" require something more than unreasonable behavior, and this issue is not adequately explored in the briefing.

### 2. State Farm's Decision to File an Interpleader

Another source of potential breach emanates from State Farm's decision to file this interpleader. Regarding Jane's breach of contract claim, State Farm argues that it discharged its contractual obligation by interpleading the proceeds of the policy with this court, and claims that there can be no cause of action for negligent breach of contract.[47] Jane, on the other hand, does not believe performance was rendered because the proceeds were not distributed directly to her, and claims that the delay caused by the interpleader amounted to non-performance.[48] The Restatement (Second) of Contracts states that "[f]ull performance of a duty under a contract discharges that duty."[49] Where performance is impracticable, as State Farm contends it was here, a temporary delay in

---

[45] *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993). Since *Hillman*, the Alaska Supreme Court has only meaningfully discussed bad faith in *Peter v. Progressive Corp.*, 2006 WL 438658, **4, 6 (Alaska Feb. 22, 2006), which reaffirmed *Hillman* and found that "[t]he first requirement for a bad faith tort against a first-party insurer is that 'the insurance company's refusal to honor a claim be made without a reasonable basis.'" *Id.* at *6 (quoting *Hillman*, 855 P.2d at 1324).

[46] *Id.*

[47] Docket 54 at 4-6; Docket 64 at 3-4.

[48] Docket 61 at 24-27.

[49] Restatement (Second) of Contracts § 235.

-12-

paying policy proceeds to Jane does not constitute a breach of contract.[50] However, because the court has not yet determined whether this "impracticability" was caused by Campbell's own negligence or not, the court cannot conclude whether the defense of impracticability applies to State Farm's actions.[51]

Jane also contends that State Farm's interpleader was in bad faith. Because the filing of an interpleader is not a wrongful act in and of itself, State Farm's interpleader may constitute a discharge of its obligation to Jane if it was made in good faith. Couch on Insurance advises: "When an insurer makes payment of the proceeds of insurance to the person who by the policy is the proper recipient, such payment is a discharge of the liability of the insurer . . . without regard to the possible rights of others concerning the property insured under the policy."[52] "The insurer should not, however, ignore a written or oral notification that someone else is making a claim to the proceeds. In such situations, it is important to seek a clarification of the facts involved. If the insurer is unable to obtain a definitive legal conclusion, an action should be instituted which seeks a declaration of rights of the parties."[53] Therefore, if an insurer who is on notice of adverse claims to the policy proceeds pays the wrong beneficiary, the insurer will be liable for the amount wrongfully paid and the rightful claimant may be harmed.[54]

The Ninth Circuit addressed this very issue under California law in *Minnesota Mutual Life Insurance Company v. Ensley*.[55] In *Ensley*, the insured had initially named

---

[50]Restatement (Second) of Contracts § 269 ("Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists . . . .").

[51]*See* Restatement (Second) of Contracts § 261 ("If the event is due to the fault of the obligor himself, this Section does not apply.").

[52]4 Couch on Insurance 3d § 61:9.

[53]*Id.* (editor's comment).

[54]*Id.* § 61:11.

[55]174 F.3d 977, 979-80 (9th Cir. 1999). There does not appear to be a material distinction between Alaska and California law in interpreting insurance contracts, *Kalmbach, Inc. v. Insurance Co. of State of Pa., Inc.*, 529 F.2d 552, 555 (9th Cir. 1976)

-13-

his wife as sole beneficiary of his life insurance policy. After his divorce, he named his brother sole beneficiary.[56] However, because the divorce was not final until five days after the insured's death, the decree of final marital dissolution did not expressly dispose of the life insurance policy.[57] Therefore, upon the insured's death, his brother submitted a beneficiary claim form to the insurer.[58] Because the insurer believed there might be multiple claims on the policy, it filed an interpleader action naming both the insured's ex-wife and brother as defendants and deposited the policy proceeds into the registry of the court.[59] The insured's brother then answered the insurer's complaint and filed counter-claims against the insurer for breach of contract and implied covenant of good faith and fair dealing, negligence, and fraud. The insurer and its agent moved for summary judgment on the counterclaims, and the district court granted the motion as to all claims.[60] The Ninth Circuit held that the insurer properly deposited the proceeds with the court, discharged its obligations under the policy, and acted with the good faith belief that it faced the possibility of multiple claims.[61] On that basis, the court affirmed the district court's grant of summary judgment in favor of the insurer and its agent on the

---

("[there is] no significant distinction between the law of California, where the contract was made, and the law of Alaska"); adjudicating negligence claims, *St. Denis v. Department of Housing and Urban Development*, 900 F. Supp. 1194, 1206 (D. Alaska 1995) ("the respective Supreme Courts of Alaska and California apply the same test [for negligence]."); or implying a covenant of good faith and fair dealing, *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997) (citing California law in analysis of implied covenant of good faith and fair dealing claim).

[56]*Ensley*, 174 F.3d at 980.

[57]*Id.*

[58]*Id.*

[59]*Id.*

[60]*Id.*

[61]*Id.* at 981.

-14-

Case 3:07-cv-00164-JWS   Document 92   Filed 12/17/08   Page 14 of 19

breach of contract, breach of implied covenant of good faith and fair dealing, and negligence claims.[62]

Although *Ensley* may apply in this case, the parties have not presented the facts necessary to determine whether State Farm acted reasonably in filing this interpleader. The court knows nothing of the discussions between Campbell and State Farm or the internal discussions at State Farm regarding the decision to file the interpleader. It is therefore impossible for the court to determine what, if any, "efforts" State Farm made to "obtain a definitive legal conclusion" before filing this interpleader. The alleged ambiguity in the law surrounding the revocation-upon-divorce statute may have provided State Farm a reasonable ground to file the interpleader.[63] However, it is not clear from the record that State Farm based its decision to file this interpleader on that ground. It is possible that State Farm based its decision on pressure from John's successor beneficiaries or a reluctance to choose the wrong beneficiary. Such reluctance, in the face of clear evidence of John's intent, indicates that State Farm may have put its own interests ahead of John's clearly expressed intentions. Under these circumstances, Jane may be correct that State Farm "stirred up a controversy where none need exist."[64] However, without additional facts, the court cannot decide whether State Farm's interpleader was filed in good faith.[65]

---

[62]*Id.* Alaska law recites essentially the same rule. In *Nome Commercial Company v. National Bank of Alaska*, upon which State Farm relies, the Alaska Supreme Court held that "[a] stakeholder who reasonably and in good faith believes that there are adverse claims to [a] fund cannot be held liable for invoking the protection of [an interpleader]." 948 P.2d 443, 451 (Alaska 1997).

[63]Indeed, the operation of the statute was unclear to Jane, who settled while awaiting this court's decision.

[64]Docket 61 at 9.

[65]The court also declines to rule on the parties' respective claims for attorney's fees. Federal Rule of Civil Procedure 22, on which State Farm bases its interpleader action, does not expressly provide for attorney's fees or costs to a stakeholder or a claimant. It is therefore within the court's discretion whether to award fees and costs. 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1719 (2001). Because it is not clear on the record before the court whether State Farm acted

**C. Causation**

    **1. Campbell's Negligence as the Cause of Jane's Alleged Injuries**

State Farm vehemently argues that Jane's settlement with her daughters was an intervening or superceding cause of her damages, and that State Farm should be relieved of tort liability as a result.[66] "[N]egligent conduct may be the legal or proximate cause of the plaintiff's injury if the negligent act was more likely than not a substantial factor in bringing about the injury."[67] The issue of proximate cause is normally a question of fact for a fact-finder to decide, and becomes a matter of law "only where reasonable minds could not differ."[68] Prominent commentators have also opined that "foreseeability is a question 'of the fundamental policy of the law, as to whether the defendant's responsibility *should* extend to such results.'"[69] Moreover, Alaska's "expansive view of foreseeability seldom warrants summary dismissal of a negligence claim on the ground of unforeseeability."[70] Here, Campbell's failure to revise John's policy according to his reaffirmed intention to maintain Jane as his primary beneficiary was clearly *a* factor in bringing about Jane's harm. Whether liability should extend to

---

reasonably in filing its interpleader, the court cannot rule at this time.

    [66]Docket 54 at 6-7; Docket 64 at 12-14.

    [67]*P.G. v. State*, 4 P.3d 326, 334 (Alaska 2000) (citation omitted).

    [68]*Id.* (citation and quotation omitted)

    [69]*P.G.*, 4 P.3d at 334 (emphasis added) (quoting W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts § 43, at 280-81 (5th ed. 1984)). The Restatement (Second) of Torts expands upon the concept of foreseeability in the context of proximate cause, noting that "[t]he fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another of the particular kind or in the particular manner in which the harm has in fact occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent toward the other and was a substantial factor in bringing about the harm." Restatement (Second) of Torts § 435, cmt. a.

    [70]*P.G.*, 4 P.3d at 334

Case 3:07-cv-00164-JWS   Document 92   Filed 12/17/08   Page 16 of 19

State Farm on this basis, however, is a fact question that cannot be resolved on this Spartan record.

### 2. State Farm's Breach of Contract as the Cause of Jane's Alleged Injuries

Under Alaska law, "causation is a required element in an action for breach of contract."[71] Generally, "[a]lthough the principles of legal causation sometimes receive labels in contract analysis different from the 'proximate causation' label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well. Indeed, the requirement of foreseeability may be more stringent in the context of contract liability than it is in the context of tort liability."[72] The most commonly applied rule is that damages are not recoverable for injury that is too remote from the conduct of the defendant constituting his breach of duty.[73]

State Farm is one of the preeminent insurers in the industry and is certainly familiar with the interpleader process. It is therefore within the realm of possibility that State Farm was aware that interpleading these proceeds could result in inducing Jane to settle with her daughters to avoid potentially losing all of the proceeds of John's policy. Faced with uncertainty regarding the operation of the statute, Jane's decision to settle is understandable. Nevertheless, the court is unaware of the factual scenario giving rise to State Farm's decision to file this interpleader and, therefore, declines at this time to address whether State Farm's alleged breach of contract caused Jane's injuries.[74]

---

[71]*Winn v. Mannhalter*, 708 P.2d 444, 450 (Alaska 1985).

[72]*Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839-840 (1996).

[73]Joseph M. Perillo, 11 Corbin on Contracts § 55.7, at 24 (2005); *see also id.* § 56.4, at 93 ("It is erroneous, therefore, to refuse damages for an injury merely because its possibility was not in fact in the contemplation of the parties at the time they made the contract.").

[74]State Farm also appears to argue that Jane failed to mitigate her damages by settling with her daughters. Docket 64 at 12-14. However, the burden is on State Farm to establish by a preponderance of the evidence that Jane could have avoided injury by reasonable efforts which she failed to make. *Winn*, 708 P.2d at 450. Because the question of reasonableness turns on additional facts of which this court is unaware, the

-17-

**D. Affirmative Defenses**

State Farm also raises two affirmative defenses to Jane's claims. State Farm first argues that Jane has waived any claim to receive the entirety of the policy proceeds because her "voluntary agreement to split the life insurance proceeds with [her] two daughters clearly evidences her abandonment and waiver of her claim to receive the full amount of the life insurance policy proceeds."[75] In Alaska, "[t]o prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver."[76] "[N]eglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question."[77] Jane's refusal to risk losing the entirety of the proceeds by settling with her daughters is not clear evidence that Jane's purpose was to waive her claim to the entirety of the proceeds. Rather, Jane has at all times continued to pursue her counterclaims against State Farm to recover damages in the form of the proceeds she relinquished to her daughters, as well as the costs of the litigation. Therefore, Jane has not engaged in unequivocal conduct which waived her right to receive the entirety of the proceeds.

State Farm next argues that Jane should be estopped from asserting extra-contractual damages against State Farm because she has asserted inconsistent positions regarding her entitlement to the policy proceeds which, if permitted, would result in an injustice to State Farm. Equitable estoppel requires the assertion of a

---

court also declines to rule on mitigation at this time.

[75]Docket 54 at 8.

[76]*Carr-Gottstein Foods Co. v. Wasilla, LLC*, 182 P.3d 1131, 1136 (Alaska 2008).

[77]*Wausau Ins. Companies v. Van Biene*, 847 P.2d 584, 589 (Alaska 1993).

-18-

position by conduct or word, reasonable reliance thereon, and resulting prejudice.[78] State Farm emphasizes Jane's alleged inconsistent behavior and the resulting prejudice, but fails to point to any sort of reliance on Jane's apparent change of behavior that would lead this court to estop Jane from seeking damages in tort and contract. Moreover, as discussed above, Jane has not changed her position and is therefore not estopped from seeking damages from State Farm.

## V. CONCLUSION

For the reasons set out above, State Farm's motion for summary judgment at docket 54 is **DENIED**. The court writes further to emphasize that it is improbable that, when the record is fully developed, this dispute would be amenable to summary disposition.

DATED at Anchorage, Alaska, this 17th day of December 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[78]*Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978).